IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLY FINANCIAL, INC. | : | CIVIL ACTION |
| *F/K/A GMAC INC*. | : | |
| | : | No.  11-7709 |
| v. | : | |
| | : | |
| MENTE CHEVROLET OLDSMOBILE, INC. | : | |
| *F/K/A MENTE CHEVROLET, INC.* | : | |
| *TRADING AS MENTE CHEVROLET,* et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                 **September 28, 2012**

In this action, Plaintiff Ally Financial Inc., f/k/a GMAC, Inc. (GMAC), brings breach of

contract claims against Defendants Mente Chevrolet Oldsmobile, Inc. (Mente Chevrolet), Mente

Chrysler Dodge, Inc. (Mente Chrysler), and these dealerships' principal, Donald M. Mente, as well

as claims for declaratory judgment and injunctive relief.  Specifically, GMAC asserts Mente

Chevrolet and Mente Chrysler breached the Wholesale Security Agreement in failing to pay sums

owed to GMAC "upon demand" (Count I), and Mente breached the Guaranty in failing to remit

payment on behalf of the dealerships "upon demand" (Count II).  The Mente Defendants ask this

Court to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6)

because the claims brought in Counts I and II have already been litigated and addressed by a jury in

an earlier federal action and thus are precluded, and there are no independent causes of action for the

claims asserted in Counts III and IV seeking equitable relief.[1]  Defendants also seek immediate

release of the sums allegedly owed to GMAC deposited in the Registry of the Court.  Finally,

---

[1] Defendants ask this Court to strike portions of Plaintiff's Complaint pursuant to Federal Rule of
Civil Procedure 12(f), or alternatively, to dismiss the Complaint in its entirety.  Because the Court
will dismiss the Complaint in its entirety, the Court will not address the motion to strike.

Defendants seek sanctions against GMAC's counsel under 28 U.S.C. § 1927 and Local Civil Rule 83.6.1, and against GMAC and its counsel under Federal Rule of Civil Procedure 11.

For the reasons that follow, Defendants' motion to dismiss will be granted in its entirety, Defendants' motion for immediate release of funds will be granted, Defendants' motion for sanctions pursuant to § 1927 and Rule 83.6.1 will be granted, and Defendants' motion for sanctions pursuant to Rule 11 will be granted.

**FACTS**

On November 19, 2009, a jury awarded the Mente Defendants $4 million in compensatory damages on their breach of contract claim brought against GMAC. Under the Wholesale Security Agreement (WSA), the master agreement that governed the wholesale financing relationship between GMAC and the Mente dealerships, the Mente Defendants were required to repay GMAC "faithfully and promptly" for all cars sold to customers. The meaning of that phrase was a central issue at the trial because it was not defined in the WSA and this Court determined it was ambiguous. The Mente Defendants argued, based on their prior course of dealing with GMAC, they were authorized to wait for their receipt of third-party funds before repaying GMAC. GMAC argued the phrase required immediate payment, to be transferred to GMAC the same day a vehicle was sold, and that if the Mente Defendants failed to remit payment "faithfully and promptly," GMAC could declare them in default or "out of trust."[2]  The jury specifically found the dealerships were not out of trust for failing to make payments faithfully and promptly, and that GMAC breached the WSA in demanding immediate payment. Thereafter, this Court denied GMAC's renewed motion for judgment as a matter of law, *Mente Chevrolet Oldsmobile, Inc. v. GMAC*, 728 F. Supp. 2d 662 (E.D.

---

[2] Upon declaring the Mente dealerships "out of trust," GMAC seized the dealerships' assets.

Pa. 2010), and the Third Circuit Court of Appeals affirmed, *Mente Chevrolet Oldsmobile, Inc. v. GMAC*, 451 F. App'x 214 (3d Cir. 2011).

In this new breach of contract action, GMAC seeks to recover $1.1. million allegedly still owed to it from the Mente Defendants arising from the same contracts—chiefly, the WSA—and same underlying events. Specifically, GMAC alleges the Mente dealerships "breached their promise to repay GMAC upon demand." Compl. ¶ 34 (Count I). GMAC asserts the WSA allows GMAC, "in its discretion, to demand repayment of all amounts due from the Dealerships at any time." Emergency Mot. for TRO and Prelim. Inj. 4, ECF No. 4. GMAC states the three other claims in the Complaint "flow" from this breach of contract claim. *Id.* 6. Count II is a second breach of contract claim against Mr. Mente, individually, for breach of the Guaranty for "failing to remit payment to GMAC upon demand," Compl. ¶ 38, and Counts III and IV are claims for declaratory and injunctive relief, respectively. GMAC asserts it never previously sought recovery or "offset" of the alleged outstanding indebtedness upon which it has sued here.

**DISCUSSION**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating such a motion, a district court first should separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211

3

(quoting *Iqbal*, 129 S. Ct. at 1950). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).

The Mente Defendants argue GMAC's Complaint should be dismissed based on the doctrine of claim preclusion because GMAC previously litigated the same claims against Defendants in the earlier federal court action and lost. Though an affirmative defense, claim preclusion may be raised in a Rule 12(b)(6) motion. *Rycoline Prods., Inc. v. C & W Unlimited,* 109 F.3d 883, 886 (3d Cir. 1997). "Res judicata, also known as claim preclusion, bars a party from initiating a second suit against the same adversary based on the same 'cause of action' as the first suit." *Duhaney v. Att'y Gen. of the U.S.*, 621 F.3d 340, 347 (3d Cir. 2010). The doctrine of claim preclusion is "central to the purpose for which civil courts have been established, the conclusive resolution of disputes." *E.E.O.C. v. U.S. Steel Corp*., 921 F.2d 489, 492 (3d Cir. 1990). To prevail on the defense of claim preclusion, a defendant must establish three elements: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Duhaney*, 621 F.3d at 347 (quoting *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008)). Claim preclusion applies to all claims actually brought or *which could have been brought* in a prior action regardless of whether they were asserted or determined in the prior proceeding. *See Inofast Mfg., Inc. v. Bardsley*, 103 F. Supp. 2d 847, 849 (E.D. Pa. 2000) (emphasis added) (citing *Brown v. Felsen*, 442 U.S. 127, 131 (1979)); *Donahue v. Gavin,* No. 98-1602, 1999 WL 165700, at *2 (E.D. Pa. Mar. 12, 1999) ("Claim preclusion provides that when a court has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as

to any other admissible matter which might have been offered for that purpose.'" (citations omitted)).

Thus, a party may not split a cause of action into separate grounds of recovery and raise the separate grounds in successive lawsuits; a party must raise in a single lawsuit all grounds of recovery arising from a single transaction or series of transactions that can be brought together. *Mars Inc. v. Nippon Conlux Kabushiki–Kaisha,* 58 F.3d 616, 619-20 (Fed. Cir. 1995) (analyzing principles of claim preclusion under Third Circuit law); *Gregory v. Chehi*, 843 F.2d 111, 117-18 (3d Cir. 1988); *Tyler v. O'Neill*, 52 F. Supp. 2d 471, 475 (E.D. Pa. 1999).

GMAC asserts Defendants' claim preclusion argument "is best suited for determination by a Rule 56 motion for summary judgment as opposed to a Rule 12(b)(6) motion to dismiss" because the Court must determine whether the Complaint fails to state a claim upon which relief can be granted based on the allegations in the Complaint alone and may not "consider[] any facts outside of the Complaint." Pl.'s Resp. to Mot. to Dismiss Pl.'s Compl. 3, ECF No. 26. Generally, a court is not permitted to consider matters beyond the pleadings on a Rule 12(b)(6) motion, although it may consider documents attached to or submitted with the complaint without converting the motion into one for summary judgment, or "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); *accord DiFronzo v. Chiovero*, 406 F. App'x 605, 607 (3d Cir. 2011) (noting document integral to or specifically relied upon in complaint may be considered); *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 485 n.12 (3d Cir. 2000) (explaining court may consider statements made by counsel at oral argument to clarify allegations in complaint on review of dismissal for failure to state claim); *Children's Seashore House v. Waldman*, 197 F. 3d 654, 662 n.7 (3d Cir. 1999) (noting court can consider matters of public record on a motion to

dismiss).  The defense of claim preclusion may be raised and adjudicated in a 12(b)(6) motion and "the court can take notice of all facts necessary for the decision."  *Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008).  "Specifically, a court may take judicial notice of the record from a previous court proceeding between the parties."  *Id*. (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988) (finding the district court was entitled to examine the record in the prior action and "take judicial notice of these matters" in rendering its decision on a Rule 12(b)(6) motion to dismiss)); *see also Russo v. City of Philadelphia*, 459 F. App'x 176 (3d Cir. 2012) (affirming district court's dismissal of action for failure to state a claim under Rule 12(b)(6) based on the doctrine of res judicata); *Walsh v. Quinn*, 359 F. App'x 273 (3d Cir. 2009) (same).  Thus, this Court may consider the doctrine of claim preclusion at this stage of the litigation.

The first two elements of the doctrine are clearly satisfied here.  A jury in the earlier federal action before this Court between these same parties awarded damages in favor of the Mente Defendants and against GMAC, and the Third Circuit affirmed that verdict.  Hence, the plaintiff and defendants in this action are the same as the parties in the earlier action and there was a final judgment on the merits in the earlier action.  *See Tyler*, 52 F. Supp. 2d at 475 (noting because earlier lawsuit between same parties was tried to verdict, elements of identical parties and a final judgment on the merits had been met).  The only element at issue, therefore, is whether this action brought by GMAC against the Mente Defendants is based on the same cause of action as the earlier lawsuit.

Whether a lawsuit involves the same cause of action as an earlier suit depends not on the particular legal claims or legal theory asserted, but on the "*essential similarity* of the underlying events giving rise to the various legal claims."  *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963

(3d Cir. 1991) (quoting *Davis v. U.S. Steel Supply*, 688 F.2d 166, 171 (3d Cir. 1982) (en banc)) (emphasis added).[3]   In making this determination, a court should focus on "whether the acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation required to prove such allegations were the same." *Id.* (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984)).   As set forth earlier, claim preclusion operates to bar "not only claims that were brought in the previous action, but also claims that could have been brought." *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 173 (3d Cir. 2009) (quoting *Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 2007)); *Gregory*, 843 F.2d at 116 (explaining claim preclusion prevents a party from re-litigating claims it might have but did not assert in the first action).   Thus, the fact that a later-filed suit includes new allegations will not prevent preclusion where the allegations involve "fundamentally similar" issues and are alleged against the same parties as in the earlier action.   *See Elkadrawy*, 584 F.3d at 173-74 ("The fact that several new and discrete . . . events are alleged does not compel a different result. A claim extinguished by res judicata 'includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction or series of connected transactions, out of which the action arose.'"   (quoting Restatement (Second) of Judgments § 24(1) (1982) (emphasis omitted))). Applying these standards, it is clear that the material facts alleged in each suit are the same, the documents are the same, and the underlying events giving rise to GMAC's claims are the same and

---

[3]  In determining whether a lawsuit is based on the same cause of action as an earlier suit, a court is not limited to the original complaint in the earlier lawsuit, but may consider "the actual issues adjudicated" in the lawsuit.  *See Lubrizol Corp.*, 929 F.2d at 963 (rejecting a plaintiff's argument that the court should focus solely on the complaint in an earlier lawsuit to determine whether an issue was part of the "cause of action" asserted in the earlier lawsuit, and instead focusing on "the actual issues adjudicated" in the earlier action, which included issues raised as defenses).

are therefore indisputably connected to those adjudicated in the earlier federal lawsuit.

Even so, GMAC argues the doctrine of res judicata does not apply where there is a splitting of claims.  GMAC further argues it did not previously assert a claim raising the breach of the agreements it has sued upon in this lawsuit, or more specifically, the breach of the "upon demand" clause in the WSA, because it was "under no such obligation to pursue such claims" in that trial pursuant to Federal Rule of Civil Procedure 13(a)(2)(A) (relating to exceptions to compulsory counterclaims). Pl.'s Resp. to Mot. to Dismiss Pl.'s Compl. 2.  "The requirement that counterclaims arising out of the same transaction or occurrence as the opposing party's claim 'shall' be stated in the pleadings was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." *S. Constr. Co. v. Pickard*, 371 U.S. 57, 60 (1962).  "The Rule [i]s particularly directed against one who fail[s] to assert a counterclaim in one action and then institute[s] a second action in which that counterclaim bec[o]me[s] the basis of the complaint." *Id.*  GMAC relies on an exception to this Rule which states that when an action is commenced, and the claim at issue is the subject of another pending action, the pleader need not state the claim in the second-filed action.  Fed. R. Civ. P. 13(a)(2)(A).  This exception is not mandatory, but merely provides the defendant with the option of continuing the prior action rather than asserting it as a counterclaim in the second action without fear of it being barred if the second action results in a judgment before the claim has been adjudicated in the first.  6 Fed. Prac. & Proc. § 1411 (3d ed.).  However, "res judicata will not be defeated by minor differences of form, parties or allegations where the [ultimate and] controlling issues have been resolved in a prior proceeding in which the present parties had an opportunity to appear and assert their rights." *Massullo v. Hamburg, Rubin, Mullin, Maxwell & Lupin, P.C.*, No. 98-116, 1999 WL 313830, at *5 (E.D. Pa. May 17, 1999)

(internal citations and quotations omitted); *see also Jett v. Beech Interplex, Inc.*, No. 02-9131, 2004 WL 1595734, at *3 (E.D. Pa. July 15, 2004).

In April 2008, GMAC filed an action in state court seeking $1.45 million against the Mente Defendants based upon Mente's breach of the same contracts, the WSA and the Mente Guaranty, for failure to make payment to GMAC. In May 2008, Mente filed its own state court proceeding against GMAC for breach of the WSA, which GMAC removed to this Court. That case became the federal action which proceeded to trial before this Court. After the jury award in that action, GMAC voluntarily dismissed its state court action without prejudice; this is the same claim that GMAC asserts now in the instant case. GMAC alleges Mente failed to consolidate the two state cases or seek dismissal of GMAC's state court case *with* prejudice. Accordingly, GMAC asserts Mente has consented to the splitting of the claims and, therefore, res judicata does not apply. *Bradley v. Pitt. Bd. of Educ.*, 913 F. 2d 1064, 1072 (3d Cir. 1990) (explaining the rule against claim splitting is not applicable where the defendant consents or otherwise fails to "object to the splitting of the plaintiff's claim which is effective as an acquiescence in the splitting of the claim" (quoting Restatement (Second) of Judgments § 26(1)(a) comment a (1982))). However, at oral argument on this motion, the Mente Defendants represented to this Court that they in fact filed a counterclaim in GMAC's state court action, which GMAC successfully had struck and, therefore, the Mente Defendants had no choice but to institute a separate state action which became the lawsuit GMAC removed to this Court. Furthermore, the Mente Defendants demanded GMAC's state court action be dismissed with prejudice (and not without), and provided this Court with email correspondence showing proof of same. Defs.' Consol. Reply Br. 2 & Exs. A-B. Accordingly, this Court finds the Mente Defendants did not "acquiesce" in the splitting of claims, as GMAC asserts in its response brief.

Even if Rule 13(a)(2)(A) permits GMAC to bring its claim in a separate action, GMAC—despite its protest that it did not previously raise the breach of the "upon demand" clause as an affirmative defense—in fact elected to litigate that issue and final judgment was rendered such that res judicata is not defeated. *Jett*, 2004 WL 1595734, at *3 (in determining whether the causes of action are fundamentally similar so as to preclude relitigation in the second action, the central focus is whether the ultimate and controlling issues have been decided in the first action); *see also Technographics, Inc. v. Mercer Corp.*, 142 F.R.D. 429, 430 (M.D. Pa. 1992) (analyzing whether to permit a pleader to amend its answer to include an omitted counterclaim, and stating "argument for allowing the omitted counterclaim is particularly compelling because res judicata may bar the claim in a subsequent proceeding").

A review of the jury instructions, verdict form, testimony of various witnesses, including Donald M. Mente, Joseph P. Galvin, III, Donna Johnson, Christopher Carey, Karen Carrier, and William A. Tierney, and exhibits admitted into evidence in the earlier federal lawsuit demonstrate that the issue of whether the Mente Defendants failed to pay GMAC "upon demand" "at any time" was already actually litigated. *See, e.g.*, Trial Tr. 232-33, Nov. 10, 2009; Trial Tr. 163-65, Nov. 12, 2009; Trial Tr. 181, 208, 211, 235-36, 253, Nov. 17, 2009; Trial Tr. 88, Nov. 18, 2009; Trial Tr. 61, Nov. 19, 2009 (representing GMAC as its designated representative, Mr. Tierney, in interpreting the WSA, testified, "it gave us the right to demand payment at any time"); *see id.* at 84-85, 150.

Indeed, during argument at trial, counsel for GMAC objected to the fact that the jury would hear the phrase "faithfully and promptly pay," in the Court's instructions, but would not hear the phrase "upon demand" in conjunction with it, further demonstrating that GMAC had in fact argued throughout the litigation that payment was to be made "upon demand," and GMAC wanted this

precise interpretation—its own—of the"faithfully and promptly" clause before the jury in that instruction.   Trial Tr. 183-84, Nov. 19, 2009.[4]   Furthermore, in denying GMAC's motion for judgment as a matter of law, this very Court found "the jury interpreted the WSA to mean the Chevrolet Dealership did not immediately owe money to GMAC *upon demand*."   *Mente Chevrolet Oldsmobile, Inc.*, 728 F. Supp. 2d at 683 (emphasis added).   Thereafter, GMAC argued in its brief to the Third Circuit Court of Appeals that "The Underlying Wholesale Security Agreement Authorized GMAC To Request Repayment Of All Amounts Loaned 'On Demand' At Any Time And For Any Reason, And Thus The Jury's Finding Of Breach Of Contract Cannot Stand."   As

---

[4] The final charge included neither party's interpretation of the clause, but rather, read as follows:

> A contract, members of the jury, is a legally enforced agreement between two or more competent parties who have each promised to do or refrain from doing some lawful act. Whether oral or written, a contract is enforceable if its terms clearly express what each party intended and expected.  If the terms of the agreement are not definite and certain, any uncertainty may be clarified by examining the circumstances surrounding the bargain.
>
> The parties have attached different interpretations to the phrase "faithfully and promptly pay" in the whole security agreement, in the Wholesale Security Agreement between them. Where the terms of a contract are reasonably susceptible to different constructions, appear to be possibly understood in more than one sense or [are] obscure or indefinite in meaning, then they are written in an ambiguous manner.  I have determined that [an] ambiguity as to the phrase "faithfully and promptly pay" exists and that its meaning is an issue of fact for you to decide.
>
> In determining what the parties meant by the term "faithfully and promptly" you may consider the circumstances surrounding the execution of the Wholesale [Security] Agreement, the subsequent acts of the parties, the most reasonable and natural conduct of the parties based on the intended result of the contract, and the parties' prior course of dealings.
>
> Mente contends GMAC drafted the Agreement. If you find this to be a fact then you should construe any ambiguity against GMAC and in favor of Mente provided you find Mente's interpretation of the ambiguous language to be reasonable.

*Id.* at 217-19.  (The Court notes this instruction was provided in hard copy to the jury during deliberations, without any inadvertent misstatements appearing here, which have been corrected through the use brackets).

previously set forth, GMAC's "on demand," "at any time" argument was rejected by the Third

Circuit. *Mente Chevrolet Oldsmobile, Inc.*, 451 F. App'x at 214. It is thus wholly disingenuous for

GMAC to assert now that it did not previously raise the "upon demand" clause as a defense in the

earlier federal action and litigate that issue.

Nevertheless, in further support of bringing this second action, GMAC contends "the

Restatement of Judgments acknowledges that a defendant who may interpose a counterclaim but

does not, is not precluded from subsequently maintaining a cause of action on that claim, unless the

counterclaim [1] is required to [be] interposed by [a] counterclaim statute or rule of court" (GMAC

asserts its claim falls within an exception to Rule 13, as discussed above, and therefore this prong

does not apply to it) "and [2] will not nullify the initial judgment or impair rights established in the

initial action." Pl.'s Resp. to Mot. to Dismiss Pl.'s Compl. 7 (referencing the Restatement (Second)

of Judgments § 22). GMAC cites to *Massullo*, 1999 WL 313830, in support of this argument.

However, *Massullo* actually provides support for this Court's preclusion of GMAC's claim.

In *Massullo*, Hamburg, Rubin, Mullin, Maxwell & Lupin, P.C., a law firm, filed suit in state

court against the Massullo's for breach of contract or unjust enrichment to recover outstanding

attorneys fees and costs after the Massullo's had terminated their relationship with the firm. *Id.* at

*3. The Massullo's did not file a counterclaim, but asserted only the defense of lack of

consideration. The court granted summary judgment in favor of Hamburg, specifically finding the

Massullo's "ha[d] not produced any evidence that the fees were unreasonable or *the work was*

*unsatisfactory*." *Id.* (emphasis in original). The Superior Court affirmed and the Supreme Court

denied their petition for appeal.

Thereafter, the Massullo's instituted suit in this District Court against Hamburg for legal

12

malpractice.  Hamburg asserted the claim was precluded by the state courts' determinations in its previous action "because the Massullo's assertions of legal malpractice were, or could have been, addressed in that action." *Id.* at *6.  By contrast, the Massullo's argued res judicata does not bar their legal malpractice claim because they were not compelled to file a counterclaim in the first action under Pennsylvania's permissive counterclaim rule (citing Restatement (Second) of Judgments § 22 (1980)[5]), and because the ultimate and controlling issue of their legal malpractice case was not, and could not have been, litigated in the first action.  *Id.*  This Court noted that any shortcomings in the work performed by Hamburg and resulting harm were known to the Massullo's at the time the firm filed its state court action since the Massullo's had already fired the firm by that time.  Therefore, any assertions that the firm should not have been paid because its work was unsatisfactory should have been addressed in the previous proceeding because a finding that Hamburg performed inadequately would have voided or at least decreased the firm's claim for outstanding fees.  *Id.* at *7.  Although the Massullo's asserted the defense of lack of consideration in that action, they did not specifically couch it in terms of legal malpractice, and the state court did not find any evidence that the firm's work was unsatisfactory; thus, it awarded damages based on the invoices billed. Significantly, the validity of the implied contract and the firm's performance were evaluated in the

---

[5] Section 22, Effect of Failure to Interpose Counterclaim, states:
(1) Where the defendant may interpose a claim as a counterclaim but he failed to do so, he is not thereby precluded from subsequently maintaining an action on that claim, except as stated in Subsection (2).
(2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:
    (a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or
    (b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.

state action, and the court determined the Massullo's owed damages to the firm pursuant to the terms of the contract.  This Court thus concluded res judicata precluded the Massullo's legal malpractice claim because the controlling issues in the legal malpractice action had already been addressed and adjudicated by the state courts and a subsequent judgment by this Court would nullify or impair that earlier judgment.  *Id.* at *8 (relying on Restatement (Second) of Judgments § 22).

As in *Massullo*, GMAC asserted only a defense against the Mente Defendants' claims in the earlier action, and not a counterclaim.  Whereas in *Massullo* the defense was "couched" somewhat differently than the claim brought in the second action (lack of consideration versus a legal malpractice claim), here, GMAC's defense in the first action and subsequent claim brought in the second action are identical (breach of the "upon demand" clause of the WSA).  As set forth above, GMAC's "upon demand" defense was thoroughly litigated in the earlier federal action so as to preclude GMAC's instant breach of contract claim prefaced on the *exact same premise*; the controlling issues have already been addressed and adjudicated, given the jury outright rejected GMAC's defense that "faithfully and promptly pay" gave GMAC the right to require payment "upon demand," and further found the Mente Defendants were not in breach of the "faithfully and promptly" payment clause, or "out of trust."  Moreover, a judgment on GMAC's instant claim may impair that earlier judgment.[6]

Furthermore, the doctrine of issue preclusion provides additional grounds upon which to

---

[6] In addition, proof that a party failed to perform its contractual obligations is a well-established defense to an action for breach of contract.  *Massullo*, 1999 WL 313830, at *7 (explaining "[a] party may not insist upon performance of the contract when he himself is guilty of a material breach of contract" (internal quotations and citations omitted)).  Thus, given GMAC has been found to have breached the WSA by demanding payment in contravention to the "faithfully and promptly" pay clause, it may not now demand the Mente Defendants' performance of the same contract.

preclude GMAC's claim, and comment c to § 22 of the Restatement (Second) of Judgments, is instructive on this point: "Where the same facts constitute a ground of defense to the plaintiff's claim and also a ground for a counterclaim, [and] the defendant alleges those facts as a defense but not as a counterclaim, and after litigation of the defense judgment is given for the plaintiff, the rules of issue preclusion apply" to bar relitigation in a second proceeding between the parties of those issues determined in the first proceeding.  Restatement (Second) of Judgments § 22 comment c.

Claim preclusion and issue preclusion are distinct concepts.  Whereas claim preclusion prevents a party from re-litigating claims it might have but did not assert in the first action, issue preclusion forecloses only a matter actually litigated and essential to the decision.  *See Gregory*, 843 F.2d 111, 116 (3d Cir. 1988); *see also In re Continental Airlines*, 279 F.3d 226, 233 (3d Cir. 2002) (explaining claim preclusion bars reconsideration of the "very same claim" decided in prior judgment, while issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved" in a prior proceeding (citing Restatement (Second) of Judgments §§ 17, 27 (1980))).  Both claim and issue preclusion serve the same policy goals of conservation of judicial resources, fostering reliance on judicial action, and avoidance of the expense and vexation accompanying multiple lawsuits.  *See E.E.O.C.*, 921 F.2d at 492 (internal citation omitted); *see also Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991) (stating issue preclusion promotes the policy that "a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise").

Thus, issue preclusion also precludes GMAC's "upon demand" defense asserted in the prior action (now retooled as a breach of contract claim).  Moreover, with respect to the "setoff" or

"recoupment" of the $4 million judgment to which GMAC contends it is still entitled, this issue was also previously litigated, precluding GMAC from seeking recovery of it again now.[7]

Donna Johnson, among other witnesses, testified at the trial in the earlier federal action about sums GMAC asserted it was immediately owed and about a spreadsheet produced by GMAC in that litigation which set forth GMAC's reconciliation of amounts owed to GMAC by the Mente Defendants after it had shut down the dealerships. *See, e.g.*, Trial Tr. 125-129, Nov. 17, 2009. This spreadsheet, Trial Exhibit 161, further demonstrates that the $1 million-plus sum of money GMAC claims it is owed in the instant lawsuit, was indeed before the jury, and was uncontested. Because a jury is presumed to follow a court's instructions, *CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009) (citing *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987)), this Court can conclude the jury considered all exhibits admitted into evidence during trial, including, *inter alia*, Exhibit 161 presenting the amounts owing to GMAC, particularly in light of the instructions to the jury to "confine your considerations to the evidence presented from the witnesses and from any exhibits admitted in evidence." Trial Tr. 205, Nov. 19, 2009; *see also id.* 270 (instructing jury that "[b]oth parties and the public expect that you will carefully and impartially consider all the evidence in the case, follow the law as I state the law to you and reach a just verdict regardless of consequences. When you go back to the jury room, your job will be to weigh the evidence in the case and reach a verdict, solely upon the basis of the evidence."). The record thus supports the finding that the sum of money GMAC now alleges it is still owed by the Mente Defendants in the instant action was already considered by the jury in the earlier federal action and accounted for in rendering its verdict.

---

[7] Consequently, this Court need not address whether or not GMAC's claim is properly characterized as a "set-off" or "recoupment."

As a result, not only has GMAC's "upon demand" defense been litigated, but the issue of sums owed to GMAC (which GMAC terms as the "setoff" or "recoupment" it is owed) has also been litigated and considered by a jury.[8]  GMAC's breach of contract claim is therefore precluded, and Count I is dismissed.[9]

---

[8] GMAC also cites to *In re Faust*, 353 B.R. 94 (Bankr. E.D. Pa. 2006), in support of the proposition that a claim that merely seeks to reduce the amount of a judgment (a "recoupment," as GMAC alleges it is seeking) is not precluded by the Restatement (Second) of Judgments § 22.  The *Faust* court was addressing Truth in Lending Act (TILA) claims brought pursuant to a mortgage foreclosure action, which has its own rules of procedure particularly with respect to TILA claims. While the court precluded the claims at issue in a second action because they had been litigated, it permitted the "recoupment" damages, concluding without any analysis that a recoupment would not "nullify" or "impair" the initial judgment.  353 B.R. at 103; *contra Massullo*, 1999 WL 313830, at *8.  In stark contrast to GMAC's "upon demand" defense/claim at issue here, the damages at issue in *Faust* had not previously been litigated, thus explaining, at least in part, that court's decision to permit recoupment in the subsequent suit.

[9] GMAC also asserts its Complaint seeks merely a "setoff or recoupment" of the $4 million judgment awarded to the Mente Defendants to which it is entitled because GMAC is a secured creditor of the Mente dealerships based on the WSA and, therefore, has a security interest in the judgment.  Once a default occurs, a secured creditor is obligated to dispose of collateral in a commercially reasonable manner under the Uniform Commercial Code (UCC).  *U.S. v. Leahy*, 445 F.3d 634, 658 (3d Cir. 2006); *Solfanelli v. Corestates Bank, N.A.*, 203 F.3d 197, 201 (3d Cir. 2000); *In re Copeland*, 531 F.2d 1195, 1205, 1207 (3d Cir. 1976); *see also Gen. Elec. Capital Corp. v. Flynn*, Nos. 91-7666, 91-7679, 1993 WL 232292, at *2 (E.D. Pa. June 23, 1993) (stating, "[o]n default, the secured creditor does not possess an unfettered right to proceed against collateral").  Where this obligation is disregarded, and collateral is disposed of in a commercially unreasonable manner, any debt is extinguished.  *Gen. Elec. Capital Corp.*, 1993 WL 232292, at *2 (stating failure to obtain a commercially reasonable price extinguishes the debt); *In re Tarbuck*, 304 B.R. 712, 717 (Bankr. W.D. Pa. 2004) ("[F]ailure to establish commercial reasonableness of the resale price creates a presumption that the value of the collateral equaled the indebtedness secured, thereby extinguishing the indebtedness . . . ." (internal citations omitted)).

Because (1) the Mente Defendants were not found to be in default, or "out of trust," and therefore, we do not even reach the question of commercial reasonableness, and (2) this Court finds GMAC's claims are precluded based on the doctrine of claim preclusion, or alternatively, issue preclusion, the Court need not discuss whether GMAC operated in accordance with the UCC such that GMAC is entitled to its alleged debt.  Nevertheless, it seems apparent to this Court from the evidence in the earlier federal action, and the court opinions following the conclusion of that proceeding, that GMAC operated in a commercially unreasonable manner such that any debt to which GMAC believes it is still entitled is extinguished.  *See, e.g.*, *Mente Chevrolet Oldsmobile,*

As GMAC asserts, its remaining claims flow from its breach of contract claim.  Pl.'s Resp. to Mot. to Dismiss 9.  Thus, and consistent with Defendants' position, if there is not a viable breach of contract claim against the Defendant Mente dealerships, the claim against Mente personally for secondary payment obligations to GMAC necessarily collapses, as do GMAC's claims seeking equitable relief.

Moreover, GMAC's claim against Mente for breach of the Guaranty is contingent upon a default of the Mente dealerships.  *See* Pl.'s Compl. Ex. C (Guaranty).  The Guaranty expressly states that Mr. Mente "does hereby unconditionally guarantee the payment of all indebtedness of [the Defendant Mente dealerships] to GMAC . . . together with all costs, expenses and attorneys' fees incurred by GMAC in connection with any default of [the Mente dealerships]."  *Id*.  However, the jury expressly found the Mente dealerships were not in default, or "out of trust."  Thus, for both of these reasons, Count II of GMAC's Complaint is dismissed.

Regarding GMAC's claims for declaratory judgment and injunctive relief, this Court notes that a handful of courts in the Third Circuit have held that such forms of relief are remedies, and not separate causes of action.  *See Hammer v. Vital Pharms., Inc.*, No. 11-4124, 2012 WL 1018842, *13

---

*Inc.*, 728 F. Supp. 2d at 674-75 ("The jury found the dealerships were not out of trust on July 19, 2007, and therefore found GMAC's seizure of the dealerships' finances and property were actions made in bad faith . . . Once GMAC wrongfully seized the dealerships' assets, it offered to partially return these seized items to secure Plaintiffs' promise to forfeit their rights to sue GMAC for its impermissible conduct.  As consideration for Plaintiffs' waiver, GMAC offered to refrain from pursuing a creditor's action against the dealerships, despite knowing it was not legally entitled to take such action . . . By declaring the dealerships out of trust and plundering Plaintiffs' inventory, GMAC stripped the dealerships of the ability to generate income and access their own money, thereby placing Mente in an untenable financial situation . . . GMAC's actions were taken in bad faith for the purpose of shutting down the dealerships . . . .").  Of course, as explained above, GMAC's purported debt was already considered by the jury in the earlier federal action.  *See* Trial Tr. 219, Nov. 19, 2009 (instructing jury on disposition of collateral in commercially reasonable manner thus evidencing jury was to consider GMAC's outstanding debt).

(D.N.J. Mar. 26, 2012); *see also Westway Holdings Corp. v. Tate and Lyle PLC*, No. 08-841, 2009

WL 1370940, *8 (D. Del. May 13, 2009) ("This Court recognizes that a claim for injunctive relief

is not a separate cause of action in the Complaint, but an equitable remedy."). Despite this pleading

error, the Federal Rules of Civil Procedure require courts to construe pleadings liberally. Fed. R.

Civ. P. 8(e) ("Pleadings must be construed so as to do justice"); *see, e.g.*, *Proper v. Crawford Cnty.*

*Corr. Facility*, No. 06-279, 2010 WL 3829640, *2 n.6 (W.D. Pa. Sept. 24, 2010). Nevertheless, the

Court finds that GMAC's claims for equitable relief—regardless whether they are independent

causes of action or solely remedies—are expressly tied to its breach of contract claims which,

because those claims fail, so do GMAC's claims seeking equitable relief. *See id.* Accordingly,

Counts III and IV of GMAC's Complaint are dismissed.[10]

Rule 15(a)(2) provides that courts "should freely give leave [to amend] when justice so

requires." Fed. R. Civ. P. 15(a)(2). However, given the basis for this ruling, GMAC will not be able

to state any plausible claim for alleged monies owed should it choose to amend its Complaint.

Consequently, this Court finds amendment would be futile and, therefore, GMAC's Complaint is

dismissed with prejudice. As a result, this Court grants the Mente Defendants' motion for immediate

release of the funds deposited into the Court's Registry.

This Court next addresses the Mente Defendants' two motions for sanctions. The first

motion seeks sanctions against GMAC's counsel pursuant to 28 U.S.C. § 1927, Local Civil Rule

83.6.1, and the inherent powers of the Court. The second motion seeks sanctions against GMAC and

its counsel under Federal Rule of Civil Procedure 11.

---

[10] Because this Court has disposed of GMAC's Complaint on the theories of claim and issue
preclusion, and its other claims fail as a result, Defendants' alternative argument asserting the statute
of limitations as a bar to GMAC's claims need not be addressed.

Rule 11 authorizes the Court to impose "sanctions upon the signer of any pleading, motion or other paper that was presented for 'any improper purpose, such as to harass, cause unnecessary delay or needless[ ] increase in the cost of litigation.'"  Fed. R. Civ. P. 11(b)(1); *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995) (quoting *Landon v. Hunt*, 938 F.2d 450, 452 (3d Cir. 1991) (per curiam)).  The Rule imposes upon the signer of the pleading to certify "the factual contentions have evidentiary support."  Fed. R. Civ. P. 11(b)(3).  The standard for imposing sanctions under Rule 11 is one of "reasonableness under the circumstances."  *Martin*, 63 F.3d at 1264 (quoting *Landon*, 938 F.2d at 453 n.3).  This requires a determination of "'whether, at the time [counsel] filed the complaint, counsel . . . could reasonably have argued in support' of his legal theory."  *Pensiero, Inc. v. Lingle*, 847 F.2d 90, 96 (3d Cir. 1988) (emphasis omitted) (quoting *Teamsters Local Union No. 430 v. Cement Express, Inc.*, 841 F.2d 66, 70 (3d Cir. 1988)).  "To comply with this standard, counsel 'must conduct a reasonable investigation of the facts and a normally competent level of legal research to support the presentation.'"  *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994) (quoting *Pensiero*, 847 F.2d at 94).  "The Third Circuit has utilized Rule 11 to filter out frivolous pleadings that are legally unreasonable or that lack factual foundation."  *Becker v. Sherwin Williams*, 717 F. Supp. 288, 297 (D.N.J. 1989) (citing, *inter alia*, *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157 (3d Cir. 1986)).  "Bad faith is not required."  *Martin*, 64 F.3d at 1264 (citing *Landon*, 938 F.2d at 453 n.3).  If an offending document is filed, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."  Fed. R. Civ. P. 11(c)(1).  A sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.  The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence,

an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."  Fed. R. Civ. P. 11(c)(4).

Section 1927 of Title 28 of the United States Code provides:

> Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  "This section is not limited by, but exists in addition, to other sanctioning regimes such as Rule 11."  *Murphy v. Housing Auth. and Urban Redevelopment Agency of Atlantic City*, 158 F. Supp. 2d 438, 445 (D.N.J. 2001) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)). Section 1927, unlike Rule 11, requires bad faith.  *Martin*, 63 F.3d at 1264 (citing *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484 (3d Cir. 1987).  "Before assessing attorneys' fees under § 1927, a District Court should find that the attorney to be so sanctioned acted willfully, and identify the conduct which constituted bad faith."  *Murphy*, 158 F. Supp. 2d at 446 (citing *Baker Indus., Inc. v. Cerberus Ltd.*, 764 F.2d 204, 209 (3d Cir. 1985)).  Bad faith can be shown through "the intentional advancement of a baseless contention that is made for an ulterior purpose, *e.g.*, harassment or delay."  *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986).  "When a claim is advocated despite the fact that it is patently frivolous or where a litigant continues to pursue a claim in the face of an irrebuttable defense, bad faith can be implied."  *Loftus v. Se. Pa. Transp. Auth.*, 8 F. Supp. 2d 458, 461 (E.D. Pa. 1998), *aff'd*, 187 F.3d 626 (3d Cir. 1999), *cert. denied*, 528 U.S. 1047.

Finally, the relevant section of Local Civil Rule 83.6.1(b) states, "No attorney . . . shall present to the Court vexatious motions or vexatious opposition to motions . . . or shall otherwise so multiply the proceedings in a case as to increase unreasonably and vexatiously the costs thereof."

The Rule further provides that any attorney who fails to comply with the Rule "may be disciplined as the Court shall deem just."  Local R. 83.6.1(c).

The Mente Defendants argue sanctions under Rule 11, § 1927, and Local Rule 83.6.1 are warranted because GMAC, along with its counsel, continue to litigate an issue—abandoning any factual, legal or evidentiary basis—that was previously litigated and lost in federal court at both the trial and appellate levels.  Defendants argue GMAC's filings in this action are frivolous and entirely based on explicitly repudiated grounds and, as a result, these filings have unnecessarily multiplied the litigation and tied up funds duly awarded to Defendants.  In support of their argument, Defendants point to several allegations contained in GMAC's filings in this action, including the following, which this Court finds the most flagrant:

> "By its express terms, the [WSA] required the [Mente] Dealerships to pay the entire balance of all obligations due to GMAC . . . 'upon demand;'"

> "The Defendants (even throughout the trial of the Mente case) have never disputed that the [WSA] entitle[s] GMAC to seek repayment of all amounts loaned 'upon demand' at any time, within GMAC's sole discretion, whether for cause or without cause."

This Court is intimately aware of the issues tried during the earlier federal action and the evidence submitted in conjunction therewith.  The record amply supports a finding that GMAC's counsel was well aware of the blatant and knowing misrepresentations made to this Court, and the lack of factual and evidentiary support for these allegations.  Counsel knew the utter falsity of such allegations at the time counsel filed the pleadings in this case and effectively blindsided the Mente Defendants when it sought a TRO (seeking to deposit allegedly disputed funds into the Court's Registry) before the emergency judge on call—a judge who was at a clear disadvantage because he lacked the historical knowledge of this ongoing dispute between these parties.  This case and the

previous federal lawsuit between these parties has prolonged since 2008 (and in fact the Court memorialized in an earlier opinion GMAC's considerable efforts to further prolong the earlier federal trial at every stage, *see Mente Chevrolet Oldsmobile, Inc.*, 728 F. Supp. 2d at 668-69 & n.17), and this second action has effectively tied up more than one million dollars awarded to the Mente Defendants in 2009, an award that was affirmed by the Third Circuit Court of Appeals on November 15, 2011.  The Court believes the sanctions it imposes here are reasonable and justified in light of GMAC's conduct, and will achieve the deterrent effect for which sanctions are intended.

Accordingly, Defendants' motion for sanctions against GMAC's counsel under 28 U.S.C. § 1927 and Local Civil Rule 83.6.1 is granted, and Defendants' motion for sanctions against GMAC and its counsel under Rule 11 is granted, consistent with this Court's corresponding Order.

An appropriate Order follows.

BY THE COURT:


  /s/ Juan R. Sánchez
Juan R. Sánchez, J.